1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LINNIE LOUISE JACOBS,          )          NO. CV 12-2689 SS
                               )
               Plaintiff,      )
                               )
          v.                   )
                               )
CAROLYN W. COLVIN,             )          **MEMORANDUM DECISION AND ORDER**
Commissioner of the Social     )
Security Administration,       )
                               )
               Defendant.      )
_____)

**I.**

**INTRODUCTION**

     Linnie Louise Jacobs ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") to deny her application for Supplemental Security Income ("SSI") Benefits.  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States

Magistrate Judge.  For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for payment of benefits.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI on March 27, 2006, alleging a disability onset date of March 27, 2006.  (AR 187).  The application was denied on July 13, 2006.  (AR 99-103).  Plaintiff requested a hearing on August 31, 2006.  (AR 104).  On October 8, 2008, Administrative Law Judge ("ALJ") Dean Franks issued a decision denying benefits.  (AR 83-89).  Plaintiff requested review of the ALJ's decision on December 16, 2008.  (AR 143).  On December 16, 2010, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.  (AR 96-98).  The case was heard before ALJ Sally C. Reason on April 27, 2011.  (AR 63).  On May 26, 2011, the ALJ issued a decision denying benefits.  (AR 20-31).  The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (AR 1-7).  Plaintiff then filed the instant action on April 2, 2012.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on March 5, 1948.  (AR 187).  Plaintiff completed school through the twelfth grade and can communicate in English. (AR 69).  Plaintiff last worked in 1998 as a customer service representative.  (Id.).  She stopped working after her back "went out"

during work.  (AR 73).  Plaintiff claims that the pain grew worse over time.  (Id.).  Plaintiff alleges that she can no longer work because she suffers from "chronic pain" in her back, arms and legs.  (AR 69-79).

**A.   Plaintiff's Testimony**

Plaintiff testified that she suffers from constant back pain.  (AR 72).  She claims that her back pain radiates up to her arms, especially her left shoulder, and down through her legs to her feet.  (AR 72).  Plaintiff also experiences numbness in her lower body.  (Id.).  Plaintiff claims that she can sit for only twenty to thirty minutes because her back "goes out" and she experiences muscle spasms.  (AR 70, 76).  In addition, Plaintiff testified that she can walk no more than about half a block to a block and that she can lift only about ten pounds.  (AR 76).

Plaintiff also claims that she suffers from headaches, anxiety and depression.  (AR 77).  Plaintiff experiences headaches everyday.  (AR 78).  She claims that her headaches stem from her back pain and that her medications help relieve some of the pain.  (AR 78-79).  Plaintiff also testified that she has trouble sleeping and is tired throughout the day.  (AR 77-78).  With respect to her depression, Plaintiff has problems dealing with people and has no interest in any activities.  (AR 77).  She claims that her depression causes her to "shut down" and not deal with anyone or anything.  (AR 77).

3

**B.   <u>Plaintiff's Medical History</u>**

Dr. Kathleen Presutto-Nelson examined Plaintiff on May 26, 2000. (AR 280).   In her report, Dr. Nelson noted that Plaintiff had undergone several treatments, including physical therapy, nerve block and medications in connection to her back pain.   (AR 280).   Dr. Nelson reported possible lumbosacral radiculopathy and possible lumbar disk disease.   (AR 281).   Between June and September 2000, Dr. Nelson regularly treated Plaintiff with a series of lumbar epidural injections. (AR 265-79).   Plaintiff underwent lumbosacral spine surgery on September 13, 2000.   (AR 265).

After her surgery, Plaintiff was treated by physicians at Kaiser Permanente.   (AR 312-770).   Dr. Thomas Stephenson examined Plaintiff on August 13, 2008.   (AR 369-72).   Dr. Stephenson observed limited range of motion of the lumbar spine and tenderness to palpation and spasms to the lumbar and lumbosacral spine.   (AR 371).   Dr. Stephenson reported degeneration of the lumbosacral intervertebral disc, spondylolisthesis, and arthropathy of lumbar facet.   (<u>Id.</u>).

A July 24, 2008 x-ray of Plaintiff's lumbosacral spine showed spondylolisthesis and degenerative facet joint changes, as well as decreased disc space associated with sclerosis.   (AR 342, 370). Moreover, a December 19, 2008 MRI of Plaintiff's lumbar spine showed degenerative changes in the lumbar spine, levoscoliosis, stenosis, and anterolisthesis. (AR 314).

4

On August 12, 2009, Dr. Gregory Helman reported that Plaintiff experienced left hand numbness and weakness. (AR 644). Moreover, Dr. Helman reported that, although Plaintiff's left arm strength is "5 out of 5," her left arm is weaker than her right. (AR 645). On January 19, 2011, Dr. William Tallakson examined Plaintiff and reported tenderness to palpation over Plaintiff's left shoulder, as well as limited range of motion and a positive impingement test. (AR 689). Finally, a January 22, 2011 x-ray of Plaintiff's left shoulder showed joint arthrosis and mild lateral downsloping of the acromion.[1] (AR 695).

**C.   Plaintiff's Consultative Examinations**

On June 26, 2006, Dr. William Boeck, an orthopedic surgeon, examined Plaintiff at the request of the California Department of Social Services. (AR 285-89). With respect to Plaintiff's left shoulder, Dr. Boeck observed limited range of motion during flexion, extension, abduction, and adduction exercises. (Id.). Dr. Boeck further reported "positive findings that objectively support" limited motions in the cervical and lumbar areas and limited motions in the shoulders. (AR 289). Dr. Boeck concluded that Plaintiff can lift twenty pounds occasionally, ten pounds frequently, stand and walk two hours in an eight-hour workday, sit six hours in an eight hour workday," and that "she cannot reach overhead with the left arm." (Id.).

---

[1]   The acromion is the outer end of the spine of the scapula that forms the outer angle of the shoulder. http://www.merriam-webster.com/medical/acromion

5

On July 5, 2006, A. R. Suarez, a disability examiner with the State Agency, assessed Plaintiff's residual functional capacity ("RFC").[2] (AR 290-97). After reviewing Plaintiff's medical records, Mr. Suarez reported that Plaintiff can lift twenty pounds occasionally and ten pounds frequently, stand or walk at least two hours in an eight hour workday, and sit for about six hours in an eight hour workday. (AR 291). Mr. Suarez also noted that Plaintiff is limited in her upper and lower extremities, and that she is unable to reach overhead with her left arm. (Id.).

On May 13, 2008, Dr. Rosa Colonna, a clinical psychologist, examined Plaintiff at the request of the California Department of Social Services. (AR 300-05). After a psychological examination and a review of Plaintiff's medical records, Dr. Colonna opined that Plaintiff's cognitive abilities fall within the low average range. (AR 305). Furthermore, Dr. Colonna reported that Plaintiff's results from a depression evaluation test indicate that Plaintiff suffers from "severe depression." (AR 303). Dr. Colonna diagnosed Plaintiff with dysthymia.[3]

---

[2] Residual functional capacity is "what [one] can still do despite [her] limitations" and represents an "assessment based upon all the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

[3] "A chronic mood disorder manifested as depression for most of the day, more days, than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." Stedman's Medical Dictionary 536 (26th ed. 1995).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[4] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404,

---

[4]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  See 20 C.F.R. §§ 404.1510, 416.910.

1      Subpart P, Appendix 1?  If so, the claimant is found
2      disabled.  If not, proceed to step four.
3  (4)  Is the claimant capable of performing his past work?  If
4      so, the claimant is found not disabled.  If not, proceed
5      to step five.
6  (5)  Is the claimant able to do any other work?  If not, the
7      claimant is found disabled.  If so, the claimant is
8      found not disabled.

10  Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
11  949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§
12  404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

14      The claimant has the burden of proof at steps one through four, and
15  the Commissioner has the burden of proof at step five.  Bustamante, 262
16  F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist
17  the claimant in developing the record at every step of the inquiry.  Id.
18  at 954.  If, at step four, the claimant meets his burden of establishing
19  an inability to perform past work, the Commissioner must show that the
20  claimant can perform some other work that exists in "significant
21  numbers" in the national economy, taking into account the claimant's
22  residual functional capacity, age, education, and work experience.
23  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§
24  404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the
25  testimony of a vocational expert ("VE") or by reference to the Medical-
26  Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
27  Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240
28  F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional

(strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of March 27, 2006. (AR 24). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and degenerative joint disease. (Id.). Furthermore, the ALJ found that Plaintiff does not have a severe mental impairment. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 26).

The ALJ then found that Plaintiff has the residual functional capacity to perform the full range of sedentary exertional work as defined in 20 CFR 416.967(a). (AR 27). After considering the vocational expert's opinion, the ALJ determined that Plaintiff is capable of performing her past relevant work as an order clerk/customer service representative at a call center as actually performed by Plaintiff. (AR 29-30). Accordingly, the ALJ did not proceed to step five and instead found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

10

**VII.**

**DISCUSSION**

Plaintiff contends that the ALJ erred in her assessment of Plaintiff's RFC.  Specifically, Plaintiff argues that 1) the ALJ failed to give proper weight to Dr. Boeck's medical opinion regarding Plaintiff's left shoulder, 2) failed to accurately evaluate Plaintiff's mental impairment at step two, and 3) failed to give clear and convincing reasons for rejecting Plaintiff's subjective testimony.  The Court agrees.  Accordingly, as discussed below, the Court remands and awards benefits.

**A.    The ALJ Failed to Provide Clear and Legitimate Reasons For Rejecting the Examining Physicians's Opinion**

Plaintiff contends that in assessing her RFC, the ALJ improperly rejected Dr. Boeck's opinion regarding Plaintiff's left shoulder impairment without providing clear and legitimate reasons. (Pl.'s Memorandum at 4).  The Court agrees.

The reports of consultative or examining physicians retained by the Secretary may serve as substantial evidence.  Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).  An ALJ may only reject a consultative physician's uncontradicted medical opinion based on "clear and convincing reasons." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir 1995).  Furthermore, an examining physician's opinion, even if contradicted by another doctor, can only be rejected for specific and

11

legitimate reasons that are supported by substantial evidence in the record. (Id.).

The Court finds that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Boeck's opinion regarding Plaintiff's left shoulder impairment. In his evaluation, Dr. Boeck determined that Plaintiff "cannot reach overhead with the left arm." (AR 289). Dr. Boeck based his opinion on a review of Plaintiff's medical records and objective findings from a physical examination. (AR 285-89). However, the ALJ rejected Dr. Boecks' uncontradicted opinion, stating that it appeared to be based primarily on Plaintiff's subjective complaints, and because Dr. Boeck had reported that Plaintiff "exhibits normal range of motion of the wrists and hands." (AR 28).

The ALJ's determination that Dr. Boeck's opinion is based primarily on Plaintiff's subjective complaints ignores substantial evidence in the record. Subsequent examinations of Plaintiff's left shoulder produced results similar to Dr. Boeck's. For example, during a physical examination, Dr. Tallakson also reported a limited range of motion of Plaintiff's left shoulder, as well as a positive impingement test and tenderness to palpation. (AR 689). Moreover, the January 2011 x-ray of Plaintiff's left shoulder showed evidence of joint arthrosis and downsloping of the acromion. (AR 695). Finally, in assessing Plaintiff's RFC, disability examiner A.R. Suarez also reported that Plaintiff is limited in her upper extremities in that she is unable to reach overhead with her left arm. (AR 291).

1    Moreover, the ALJ rejected Dr. Boeck's opinion because Dr. Boeck
2    had reported that "[Plaintiff] exhibits normal range of motion of the
3    wrists and hands."  (AR 28).  However, this reason is conclusory.  The
4    ALJ fails to explain the connection between Plaintiff's ability to reach
5    overhead and the range of motion of her wrists.  See Booth v. Barnhart,
6    181 F. Supp. 2d 1099, 1106 (9th Cir. 2002) (an ALJ's decision should
7    explain the basis for any material inference the ALJ has drawn so that
8    meaningful judicial review will be facilitated).  Accordingly, the ALJ's
9    decision erred by failing to provide specific and legitimate reasons to
10   reject Dr. Boeck's findings.

11

12   **B.   The ALJ Erred At Step Two By Finding That Plaintiff's Mental**
13        **Impairment Is Not Severe**

14

15   Plaintiff next contends that the ALJ erred at step two of the
16   sequential evaluation process in finding that Plaintiff does not have
17   a severe mental impairment.  (Pl's. Memorandum at 5).  The Court agrees.

18

19   At step two of the five-step sequential inquiry, the ALJ determines
20   whether a plaintiff has a medically severe impairment or combination of
21   impairments.  Smolen, 80 F.3d at 1290.  The ALJ must consider the
22   combined effect of all of the plaintiff's impairments on her ability to
23   function, without regard to whether each alone was sufficiently severe.
24   (Id.).  Furthermore, step-two is a "de minimus" screening device, used
25   to dispose of groundless claims.  Webb v. Barnhart, 433 F.3d 683, 687
26   (9th Cir. 2005).  An impairment or combination of impairments can be
27   found "not severe" only if the evidence establishes a slight abnormality
28   that has "no more than a minimal effect on an individual's ability to

13

1   work." Smolen, 80 F.3d at 1290.  An ALJ may find that a plaintiff lacks

2   a medically severe impairment or combination of impairments only when

3   the ALJ's conclusion is clearly established by medical evidence. (Id.).

4

5       Here, the ALJ found that Plaintiff lacks a severe mental impairment

6   or combination of impairments despite objective medical evidence

7   demonstrating limitations in her ability to understand and remember

8   complex instructions, make judgments on complex work-related decision,

9   and interact appropriately with the public, co-workers and supervisors.

10  (AR 306, 308).  Indeed, after performing a psychological examination,

11  Dr. Colonna reported that Plaintiff's overall cognitive ability falls

12  within the low average range.  (AR 304).  Dr. Colonna also reported that

13  Plaintiff's test results indicate that she suffers from severe

14  depression and that Plaintiff "endorses items of severe depression."

15  (AR 303).  Accordingly, Dr. Colonna diagnosed Plaintiff with dysthymia.

16  (AR 304).  Given the uncontroverted diagnosis of the examining

17  psychologist, the ALJ lacked substantial evidence for dismissing

18  Plaintiff's claim of a severe mental impairment at step two.  See Edlund

19  v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).  These findings

20  qualify as more than a "slight abnormality."

21

22      Moreover, the ALJ erred in failing to meet the standard of clear

23  and convincing reasons required to reject an uncontradicted opinion of

24  an examining psychologist. Edlund, 253 F.3d at 1158-59.  Here, the ALJ

25  gave great weight to the medical expert who testified that Plaintiff

26  does not have a severe medically determinable mental impairment.  (AR

27  25).  However, the record indicates that the medical expert testified

28  that the record lacked sufficient information to form an opinion as to

Plaintiff's psychological problems. (AR 68).  As such, the ALJ improperly rejected the psychological examiner's opinion regarding Plaintiff's mental impairments and erred by characterizing Plaintiff's mental impairment at step-two as non-severe.

**C.   The ALJ Failed To Provide Clear and Convincing Reasons For Rejecting Plaintiff's Credibility**

Plaintiff next contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her subjective symptoms.  (Pl's. Memorandum at 7).  Specifically, Plaintiff claims that the ALJ improperly discredited Plaintiff's testimony due to inconsistencies between her testimony and the evidence in the record. The Court agrees.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2006).  First, the plaintiff must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom.  Smolen, 80 F.3d at 1281-82.  Second, if the plaintiff meets this threshold, and there is no evidence of malingering, the ALJ can reject the plaintiff's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  (Id. at 1281).

The ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.  Initially, the ALJ discredited

15

1    Plaintiff's testimony because of Plaintiff's ability to drive a car and
2    go grocery shopping.  (AR 27).  In addition, the ALJ stated that she
3    found inconsistencies between Plaintiff's assertion that she is losing
4    her eyesight and an evaluation which found that Plaintiff exhibits
5    twenty-twenty vision while wearing glasses.  (AR 28).  Finally, the ALJ
6    discredited Plaintiff's testimony due to Plaintiff's minimal record of
7    paid work activities.  (Id.).

9        As noted above, the ALJ rejected Plaintiff's subjective testimony
10   because Plaintiff can drive a car and goes grocery shopping.  (AR 27).
11   However, "the mere fact that a plaintiff has carried on certain daily
12   activities, such as grocery shopping, driving a car, or limited walking
13   for exercise, does not in any way detract from her credibility as to her
14   overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.
15   2001).  These activities are not necessarily transferable to the work
16   setting and, without more evidence of contradictory daily activities,
17   are not sufficient to undermine Plaintiff's testimony.  Furthermore,
18   "[a] patient may do these activities despite pain for therapeutic
19   reasons, but that does not mean she could concentrate on work despite
20   the pain or could engage in similar activity for a longer period given
21   the pain involved."  (Id.).

23       The ALJ also discredited Plaintiff's testimony because the ALJ
24   found inconsistent Plaintiff's assertion that she is losing her vision
25   and an evaluation which shows that Plaintiff has 20/20 vision while
26   wearing glasses.  (AR 299).  However, the ALJ failed to consider that
27   the evaluation also shows that Plaintiff's visual acuity without glasses
28   is 20/200, a rating which meets the definition of legal blindness.  See

20 C.F.R. § 404.1581. Moreover, on April 11, 2011, Dr. Tony Sadighpour, optometrist, diagnosed presbyopia hyperopic astigmatism, as well as glaucoma suspect per large optic nerves. (AR 745).

Lastly, the ALJ rejected Plaintiff's testimony due to her minimal record of paid activities. Although an ALJ may consider a plaintiff's work history in making a credibility determination, see Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), here, Plaintiff's poor work history alone is insufficient for an adverse credibility ruling, given that the other stated reasons were either weak or not supported by the evidence.

## D.   **Remand For An Award Of Benefits**

While this Court may remand for further proceedings, it may also remand for an award of benefits if "the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). In order for Plaintiff to obtain disability benefits, she must demonstrate that she was disabled prior to her last insured date. Armstrong v. Comm'r of Social Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998). Further, Plaintiff will be considered disabled when she "became unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." (Id.). "Factors relevant to the determination of the disability onset include the individual's allegation, the work history, and the medical evidence." Social Security Ruling 83-20 (1983).

17

1      The Court finds that an award of benefits is appropriate here.  The
2   ALJ's determination that Plaintiff has an RFC to perform a full range
3   of  sedentary  work  is  incorrect.    The  ALJ  erroneously  assessed
4   Plaintiff's  testimony  and  her  examining  physician's  opinions.    As
5   discussed above, Plaintiff's examining physicians' opinions as well as
6   Plaintiff's testimony should be fully credited.  A proper evaluation of
7   the  evidence  would  inevitably  lead  to  a  finding  that  Plaintiff  is
8   disabled.   Accordingly, Plaintiff must be found disabled.   The Court
9   remands  to  the  agency  for  a  determination  of  the  proper  award  of
10  benefits.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for payment of benefits, consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this order and the Judgment on counsel for both parties.

DATED: March 15, 2013

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**